# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEON SEWELL, | ) |
|       Petitioner, | ) Civil Action No. 07-1179 |
| v. | ) |
| | ) Magistrate Judge Cathy Bissoon |
| JOEL DICKSON, *et al.*, | ) |
|       Respondents. | ) |

## **OPINION AND ORDER**

Leon Sewell ("Sewell" or "Petitioner") was convicted of several counts of burglary and related offenses on September 14, 2000. He was sentenced to an aggregate term of imprisonment of ten (10) to twenty (20) years on November 20, 2000.

Several burglaries were committed in the Point Breeze and Homewood sections of Pittsburgh during the late evening of April 4, 1999. Sewell was apprehended minutes after the last reported burglary and still had in his possession, *inter alia*, a Mellon Bank receipt from one of the victim's homes, which was identified by the victim (and by a Mellon Bank employee as having been issued to the victim), and a change purse belonging to one of the victims. Sewell also was in possession of cocaine and heroin when arrested, and more than $700 in cash.

The following day, Sewell gave a statement to police in which he admitted that he had entered the homes, and conceded that he took at least some of the items (e.g., he admitted making a sandwich at one residence, and taking $5, which he claimed he intended to repay). Police took Petitioner to the neighborhoods in question the day after his arrest, and Petitioner pointed out each of the homes he had broken into the night before. Sewell maintained that he

broke into the homes only as a means of attempting to elude drug dealers, from whom he had stolen the cocaine and heroin that were found in his possession.

Petitioner denied this series of events at trial, asserting instead that he ran from police on the night of the burglaries because he had drugs he intended to sell. He denied being in possession of the Mellon Bank receipt, and asserted that he had money from a tax refund check he cashed that same day. As to identifying houses and admitting he broke into them, Sewell testified that the police lied about those events.

The Court will dispense with a discussion of exhaustion and procedural default, as it is clear that the instant petition should be denied on its merits.

### A. <u>Analysis</u>

A federal court may not issue a writ of habeas corpus unless it concludes that the state court's adjudication resulted in a decision that was "contrary to" or an "unreasonable application of" clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1); <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

Petitioner alleges generally as a ground for relief that he is "actually innocent" of the crimes charged. He asserts that he was arrested merely because he was a "dark complected African American" (Doc. 6, ¶12). A claim of actual innocence is a means of avoiding procedural default in habeas corpus cases. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). Petitioner's

claims are being addressed on the merits and, accordingly, there is no need to address this exception to the procedural default doctrine.[1]

Petitioner's remaining claims are couched in terms of ineffective assistance of counsel. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Strickland, 466 U.S. at 690.

The first prong of the Strickland test requires a defendant to establish that his or her attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id.

---

1. And, in any event, Sewell's underlying factual assertion that he was arrested based on his skin color is baseless. The state court record makes clear that Sewell was apprehended within minutes after the burglaries occurred after hot pursuit by the police, and while he was still in possession of identifiable items taken from some of the homes.

The second prong requires a defendant to demonstrate that counsel's errors deprived him or her of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id.[2]

Sewell first asserts that trial counsel was ineffective for failing to move to suppress the identification testimony of victims Lora Lee Scott and Jessie Robinson. The PCRA court dealt with this claim as follows:

> When the police arrived at the house of Jessie Robinson, she described the actor as wearing a large jacket with cloth wrapped around his face. A few minutes later the Defendant, who fit the description, was apprehended in possession of Ms. Robinson's purse, the contents of which she described. The police brought her to the location of the Defendant's arrest and she positively identified him. With regard to the other victim, Lora Lee Scott, she testified that late on the evening of April 4, 1999, she and her husband heard noises outside their house. When she turned on the outside flood lights, she saw both sides of the man's face and described him as being dark complected without facial hair and short in stature. Within an hour of reporting the attempted break-in, Ms. Scott was contacted by police and taken to the location where the Defendant was arrested. She positively identified the Defendant as the man who had attempted to burglarize her home less than an hour earlier. Considering the totality of the circumstances, the identifications of both victims were reliable and not unduly suggestive. As such, if a suppression motion had been filed, it would have been denied. Trial counsel cannot be found to be ineffective for failing to pursue a claim that is not of arguable merit.

(Doc. 19, Ex. 12 at 36-37). The factual findings by the state court that the victims each had an opportunity to view Sewell, and that the identification procedures used were not suggestive, are findings that are supported by the record and entitled to deference. Counsel cannot be found

---

2. The Pennsylvania standard, applied by the state PCRA court, is not itself contrary to or an unreasonable application of Strickland. Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).

ineffective for failing to raise a meritless claim. Diggs v. Owens, 833 F.2d 439, 446 (3d Cir.1987). The denial of Petitioner's claim by the state court is neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. §2254(d)(1).

Sewell next argues that trial counsel should have objected to testimony from burglary victim Amy Bloxson that Sewell's sister informed her that Sewell was the burglar. The trial court noted that this testimony was elicited by defense counsel on cross-examination of Ms. Bloxson, and that counsel then proceeded to establish both that Sewell's sister was not present at the time of the burglary, and that Ms. Bloxson was unable to identify Sewell from a photo array or at the time of trial. The PCRA concluded that counsel's error did not cause Petitioner prejudice in light of counsel's follow-up questions. As noted above, even if counsel makes a mistake (here, asking a question which prompts otherwise inadmissible testimony), a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. In light of the overwhelming evidence of Sewell's guilt, including his own statements to police, the evidence found in his possession, and his actions in leading police on a tour of the individual homes he broke into, it is clear that counsel's error had no effect on the outcome of the trial. Hence, the state court's ruling that Sewell did not suffer the requisite prejudice from counsel's actions is neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. §2254(d)(1).

Petitioner also asserts that defense counsel rendered ineffective assistance in eliciting from a police detective that Ms. Bloxson was shown "mug shots" during the photo array. The PCRA court noted that defense counsel requested, and was granted, an immediate cautionary instruction to the jury not to draw any adverse inference from the reference to "mug shots," and

that this instruction was repeated during closing instructions to the jury. The trial court found that any prejudice had been cured by the instructions. This is an underlying finding of fact that is entitled to deference. Again, in light of the overwhelming nature of the evidence against Sewell, the PCRA court's legal conclusion that counsel's mistake did not cause constitutional prejudice is neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. §2254(d)(1).

Sewell also asserts that appellate counsel and PCRA counsel rendered ineffective assistance in failing to preserve the above issues for appeal. The underlying claims of ineffective assistance have already been determined to lack merit. Appellate counsel cannot be found ineffective for failing to raise meritless claims on appeal. Diggs, supra, 833 F.2d at 446. With respect to PCRA counsel, "[t]here is no constitutional right to an attorney in state post-conviction proceedings. Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) . . .. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. See Wainwright v. Torna, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective assistance)." Coleman, supra, 501 U.S. at 752. Thus, Sewell's claims of ineffective assistance of appellate and PCRA counsel must also be rejected.

### B. Certificate of Appealability

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). Because Sewell has not made such a showing, a certificate of appealability should be denied .

AND NOW, this 14th day of January, 2009,

IT IS HEREBY ORDERED that the instant petition is DISMISSED and a certificate of appealability is DENIED.

s/Cathy Bissoon  
Cathy Bissoon  
United States Magistrate Judge

cc:  
LEON SEWELL  
EM-1306  
SCI Greene  
175 Progress Drive  
Waynesburg, PA 15370